## A97A2449. LEONARD v. THE STATE.
### (492 SE2d 747)

ELDRIDGE, Judge.

On December 5, 1996, Investigator Robert Spires of the Macon Police Department, a five-year member of the Macon-Bibb County Drug Unit, received information from a reliable confidential informant ("RCI") regarding drug activity. The RCI told Investigator Spires that he had recently seen at least a cookie of cocaine in a 1980 light blue Dodge, Georgia tag number CSJ491; that one occupant was named "Donnie"; that the car was leaving the Antioch Road area with two to three people inside; and that the car would return to the area in a short time.

Investigator Spires ran the tag number and found that the tag was registered to Ronald Milner and was on a 1985 Dodge Charger. Investigator Spires, along with other narcotics investigators, set up surveillance at locations on Antioch Road. Within 15 minutes of the time frame given by the RCI, a car matching the description, being driven by Milner, appeared.

Investigator Spires pulled the car over and got the driver out, who was later identified as Milner. Investigator Spires informed Milner why he had been stopped and asked for consent to search the vehicle. Milner granted a consent to search his vehicle. Donnie Brown was seated in the right front seat. When the vehicle was stopped, Spencer Charles Leonard, appellant, was seated in the middle rear, leaning with his upper body between the front seats, over the console and partially over the brown paper bag with a Checker's logo.

Investigators Chris Patterson and Harry Colbert conducted the search of the vehicle. Investigator Patterson pointed out to Investigator Spires the brown paper bag between the two front bucket seats, under the edge of the driver's seat and the hump. The bag contained a cookie of crack cocaine, as well as two large pieces of crack. A piece of crack had fallen out of the bag and lay in plain view from the front passenger's seat. Investigator Patterson saw the crack as soon as the passenger door opened and he put his hand on the front seat.

Investigator Spires took the bag and drugs into custody after the

bag had been pointed out to him by Investigator Patterson.

All of the defendants denied ownership or knowledge of the crack. Leonard was searched, and no drugs, drug-related paraphernalia, or money was found on him.

Leonard stipulated and consented to submit to a polygraph examination, which was performed by Captain Raymond Moody of the Macon Police Department. Captain Moody interpreted the physical responses by Leonard to four questions as indicating deception. The four questions and answers were: "(1) Q: Did you have the cocaine with you when you got into the car? R: No; (2) Q: Did you know the drugs were in the car when you were stopped by the police? R: No; (3) Q: Did the drugs belong to you? R: No; and (4) Q: Have you told me the complete truth here today? R: Yes." The polygraph procedure was very abbreviated, and the equipment used was the least advanced, which went to the weight and credibility of the operator's opinion. The operator admitted that the same results could lead to different opinions as to interpretation by different operators.

All of the defendants stipulated to the introduction of the certified copy of the State Crime Laboratory report; the analysis showed 30.5 grams of cocaine with 69 percent purity.

Ronald Milner testified in his own defense at trial that Brown and Leonard waved him down as they walked to a convenience store, and he agreed to drive them to the store for a couple of dollars. At the store, Brown purchased beer. Milner then drove them to a location off Napier Avenue, and Brown and Leonard got out of the vehicle and went into a house, where they stayed for about 30 to 35 minutes. Milner drove them back toward the location where he had picked them up; Leonard saw a detective car and told Milner. Brown told Milner to "roll on down the street" before stopping.

Milner called as a witness Eric George McCrary, who was a prisoner when Leonard and Brown were booked into jail and had been two feet away from the defendants when he heard their conversation. According to McCrary's testimony, Leonard told Brown that he was not going to take a drug charge for Brown; Leonard also asked Brown why he did not throw the drugs out the window when they saw the detectives; Brown then offered Milner $1,000 to take the drug charge.

On February 18, 1997, Leonard was indicted along with Brown and Milner with trafficking in cocaine. Leonard made motions to suppress, to sever, and to reveal the identity of the confidential informant, which were denied. On March 26, 1997, Leonard was found guilty of trafficking in cocaine and was sentenced on March 27, 1997. A motion for new trial was made and denied on June 30, 1997. Notice of appeal was filed on July 3, 1997.

1. The first enumeration of error is that the trial court erred in

denying the motion to sever. We do not agree.

There was no pretrial showing that the defenses were antagonistic; that there would be prejudice, i.e., the danger the jury might use evidence admitted against only one defendant against another, despite a cautionary instruction; that the defendants would testify for each other if tried separately; or that the number of defendants would confuse the jury as to the evidence and law applicable to each defendant. Absent such proper showing, the decision of the trial judge will not be disturbed absent an abuse of discretion which shows "that the defendant suffered prejudice amounting to a denial of due process." OCGA § 17-8-4; *Carroll v. State*, 147 Ga. App. 332, 333 (248 SE2d 702) (1978); see also *Jones v. State*, 243 Ga. 584, 586 (255 SE2d 702) (1979); *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975); *Mitchell v. State*, 195 Ga. App. 255, 258 (2) (393 SE2d 274) (1990); *Aaron v. State*, 145 Ga. App. 349 (243 SE2d 714) (1978). Obviously the jury was not confused, because they convicted the passengers and acquitted the driver, who testified against his co-defendants. Leonard has failed to carry the burden of proving prejudice, other than that a separate trial might give him a better chance at acquittal, which is insufficient; there was no clear showing of prejudice or a consequent denial of due process. *Cain v. State*, supra at 129; *Barnett v. State*, 204 Ga. App. 491, 495 (420 SE2d 43) (1992).

2. The second enumeration of error is that the trial court erred in denying defendant's motion to reveal the identity of the confidential informant. We do not agree.

OCGA §§ 24-9-21 (4) and 24-9-27 (d) provide for privilege against disclosure of the identity of a confidential informant who was not an eyewitness to the offense that forms the basis for the prosecution, although he or she may have seen the defendant in possession of the contraband at an earlier time, but did not participate in the offense. The informant, for evidentiary purposes, is considered a mere "tipster." For purposes of probable cause, the issue of the status of a "reliable" confidential informant is a different evidentiary matter, not a constitutional matter, because guilt or innocence is not at issue on a motion to suppress and does not involve the issue of right of confrontation. *Roviaro v. United States*, 353 U. S. 53 (77 SC 623, 1 LE2d 639) (1957); *Mooney v. State*, 243 Ga. 373, 395-396 (8) (254 SE2d 337) (1979); *Swint v. State*, 199 Ga. App. 515, 516-518 (2) (405 SE2d 333) (1991). The non-disclosure of the identity of a confidential informant encourages assistance, protects the future usefulness of the informant, and protects the safety of the informant, and is a matter of sound public policy within the statutes. The movant must establish the relevance, materiality, and necessity of the identity of the informant as a predicate for disclosure. *Mooney v. State*, supra at 395-396; *Thornton v. State*, 238 Ga. 160, 162-166 (2) (231 SE2d 729) (1977),

later appeal, 239 Ga. 693 (238 SE2d 376) (1977); *Keith v. State*, 238 Ga. 157 (231 SE2d 727) (1977); *Chancey v. Hancock*, 233 Ga. 734, 736-737 (3) (213 SE2d 633) (1975); *Pass v. State*, 227 Ga. 730, 731-732 (4) (182 SE2d 779) (1971); *Beck v. State*, 216 Ga. App. 532, 534 (1) (455 SE2d 110) (1995); *Stanford v. State*, 134 Ga. App. 61 (213 SE2d 519) (1975).

However, absolute privilege against non-disclosure under all circumstances is not permitted where the informant possesses exculpatory evidence not otherwise available. See *Thornton v. State*, 238 Ga. at 164; *Taylor v. State*, 136 Ga. App. 31 (220 SE2d 49) (1975). Whether or not the identity of the confidential informant is discoverable rests within the sound discretion of the trial court, which discretion can be exercised only after the trial court has heard evidence as to the relevance, materiality, and necessity of disclosure from the defense. Leonard failed to prove any of these issues that would authorize disclosure of the informant's identity. OCGA § 17-5-30 (b); *Thornton v. State*, 238 Ga. at 165; *State v. Keith*, 139 Ga. App. 399 (228 SE2d 332) (1976), aff'd, 238 Ga. 157 (231 SE2d 727) (1977); *Swint v. State*, supra at 517; *Miller v. State*, 163 Ga. App. 889 (296 SE2d 182) (1982); *Hatcher v. State*, 154 Ga. App. 770 (270 SE2d 16) (1980); *Taylor v. State*, supra; *Stanford v. State*, supra.

An eyewitness does not enjoy the protection of the statute, because such person is a factual witness to the offense. *Swint v. State*, supra; see also *Henderson v. State*, 162 Ga. App. 320 (292 SE2d 77) (1982). An informant who takes the police to a drug buy, introduces the officer, and witnesses the sale is an eyewitness. However, the trial court, in balancing the respective rights of the defendant and the interests of the State, can in the exercise of sound discretion deny disclosure. *Howard v. State*, 144 Ga. App. 208 (240 SE2d 908) (1977); *Miller v. State*, 141 Ga. App. 382 (233 SE2d 460) (1977); *Bell v. State*, 141 Ga. App. 277 (233 SE2d 253) (1977). Further, when the informant is a witness from participating directly in the offense prosecuted and the arrest, the trial court must balance the rights of the defendant against the rights of the State. *Roviaro v. United States*, supra. "'Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' *Roviaro*, supra at 62." *State v. Royal*, 247 Ga. 309, 312 (275 SE2d 646) (1981).

In this case, Leonard moved for the disclosure of the identity of the confidential informant on the basis that the RCI was a witness to the possession of cocaine by two or three black males in the identified car prior to the arrest. Such testimony would not be exculpatory but inculpatory; however, Leonard was prosecuted for possession *at the*

*time of arrest*, not for some earlier time; therefore, the RCI was not a witness to the offense for which Leonard was tried. Therefore, this case does not come within the ambit of a confidential informant as a witness, because the RCI was not present, did not participate in the arrest, or take part in the offense. Further, the owner/driver Milner consented to the search of the vehicle, so that there was no issue as to probable cause for the search and seizure. Thus, *Ponder v. State*, 191 Ga. App. 346, 347 (381 SE2d 534) (1989) and *Moore v. State*, 187 Ga. App. 387 (370 SE2d 511) (1988), which dealt with informants who were eyewitnesses to the arrests, were distinguishable on the facts and law from this case. See *Wells v. State*, 212 Ga. App. 60, 63-64 (3) (441 SE2d 460) (1994). The strained construction of the defense would make all RCIs witnesses, requiring the disclosure of their identity, in contravention of the law and public policy. The trial court did not abuse its discretion in denying the disclosure of the identity of the RCI.

3. The third enumeration of error is that the trial court erred in denying the motion for new trial. We do not agree.

Leonard relies upon the principle that constructive possession based upon mere spatial proximity to the contraband is not sufficient to sustain a conviction for possession. *Walden v. State*, 196 Ga. App. 844 (397 SE2d 182) (1990); *In the Interest of C. A. A.*, 187 Ga. App. 691 (371 SE2d 247) (1988); see also *Llaguno v. State*, 197 Ga. App. 789, 790-791 (1) (399 SE2d 564) (1990). If the evidence of the location of the contraband were the only evidence presented, then Leonard might be correct in his analysis. However, Leonard's proximity to the drugs was not the only evidence to support a conviction based upon parties to a crime with joint constructive possession and equal access by both.

The owner/driver Milner testified that the drugs were not his; Milner's witness testified that Brown and Leonard made admissions against their penal interest in his presence that indicated that they knew the drugs were present, that they jointly possessed the drugs, and that they were engaged in the criminal activity together. Leonard also submitted to a polygraph test, and the examiner testified that, in his opinion, such results indicated Leonard's deception regarding his knowledge, ownership, and possession of the drugs. When the proximity of the drugs is coupled with such other facts and circumstances that sufficiently prove that Leonard was a party to the crime, such totality of the evidence of the circumstances sufficiently establishes joint constructive possession of the drugs. See *Lowe v. State*, 223 Ga. App. 172, 173 (477 SE2d 341) (1996); see also *Blaise v. State*, 185 Ga. App. 653, 654 (365 SE2d 499) (1988); *Garvey v. State*, 176 Ga. App. 268, 274 (6) (335 SE2d 640) (1985); *Brownlee v. State*, 173 Ga. App. 138, 139 (1) (325 SE2d 815) (1984). This Court has held

"[s]uch additional evidence may include: inculpatory statements, *Harvey v. State*, 212 Ga. App. 632, 634 (2) (442 SE2d 478) (1994); giving a false explanation to the police for presence on the scene, *Thomas v. State*, 207 Ga. App. 140, 145 (426 SE2d 923) (1993), *Bean v. State*, 204 Ga. App. 242, 243 (1) (418 SE2d 798) (1992); or possessing large sums of cash or paraphernalia consistent with the sale of contraband, *Mitchell v. State*, 222 Ga. App. 453 (474 SE2d 306) (1996), *Whitfield v. State*, 217 Ga. App. 402, 405 (457 SE2d 682) (1995). And while mere presence is insufficient to convict an accused of being a party to a crime, the testimony of an accomplice tending to connect the accused to the crime will support a jury's verdict if supported by slight evidence, which may be circumstantial. *Earl v. State*, 214 Ga. App. 891, 892 (1) (449 SE2d 361) (1994)." *Ryans v. State*, 226 Ga. App. 595, 596-597 (1) (487 SE2d 130) (1997); see also *Lester v. State*, 226 Ga. App. 373, 376 (2) (487 SE2d 25) (1997).

After the jury's verdict of guilty, Leonard can no longer rely upon the presumption of innocence, and this Court cannot re-weigh evidence or judge the witnesses' credibility. We must construe the evidence to uphold the verdict and determine only whether the evidence is such as to enable any rational trier of fact to find Leonard guilty of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Ryans v. State*, supra at 597; *Cody v. State*, 222 Ga. App. 468, 470 (1) (474 SE2d 669) (1996); *Curtis v. State*, 208 Ga. App. 720, 721 (431 SE2d 719) (1993); *Clark v. State*, 197 Ga. App. 318, 320 (1) (398 SE2d 377) (1990). "Moreover, 'the test established [in *Jackson v. Virginia*, supra,] is the proper test for us to use when the sufficiency of the evidence is challenged, whether the challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence.' *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436) (1984)." *Lester v. State*, supra at 376.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED OCTOBER 10, 1997 —

*W. Lee Robinson*, for appellant.

*Charles H. Weston, District Attorney, Kirby H. Wincey, Jr., Assistant District Attorney*, for appellee.

